HOME GAS COMPANY, Plaintiff, *v.* NICHOLAS KURUC et al., Defendants.

HOME GAS COMPANY, Plaintiff, *v.* KENNETH WARD et al., Defendants.

HOME GAS COMPANY, Plaintiff, *v.* ROSE KEESLER, Defendant.

HOME GAS COMPANY, Plaintiff, *v.* OSCAR WARD et al., Defendants.

County Court, Broome County, July 9, 1954.

*William L. Ransom, Jr.,* and *David D. Brown, III,* for plaintiff.

*Harry S. Travis* for Nicholas Kuruc and another, defendants.

*Fred H. Jeffers* for Kenneth Ward, defendant.

*Hugh A. Wheeler* for Rose Keesler and others, defendants.

BRINK, J. The plaintiff, Home Gas Company, a domestic corporation, seeks a judgment condemning an easement or right of way forty feet in width across the farm lands owned by certain of the above-named defendants for the purpose of constructing and maintaining a line of pipes under the ground to be used for the transportation of natural gas. The plaintiff corporation is engaged in the business of buying, transporting and selling natural gas within the State of New York to various utilities in southern New York including the Binghamton Gas Works, the New York State Electric and Keystone Gas Company. It is the exclusive supplier of natural gas to the Binghamton Gas Works.

This proceeding was commenced by the service of a petition and notice. The owners of the fee of the properties involved in the four above-entitled actions all appeared through their respective attorneys and filed answers denying the material allegations of the petition and in the aggregate setting forth affirmative defenses to the effect; one, there is no public necessity for the acquisition of the use of their property by the plaintiff; two, that the plaintiff has not attempted in good faith to negotiate with the owners of said properties for their pur-

chase; and three, that the interest in the properties which the plaintiff seeks to condemn is not described with sufficient accuracy and certainty.

Pursuant to a stipulation entered into, in open court, between all of the parties who appeared, through their respective attorneys, the four above-entitled actions were tried together before the court without a jury on June 23d and June 24, 1954. The issues before this court for determination are: First: Has the plaintiff established that the acquisition of the easement is a public necessity? Second: Has the plaintiff established that it has attempted in good faith to negotiate for the purchase of such easements before instituting condemnation proceedings? Third: Are the easements in said properties which plaintiff seeks to condemn, sufficiently described in the petition with reasonable certainty?

The plaintiff corporation owns and operates pipe lines between Olean and the Hudson River from which it services utilities with natural gas. The section of this pipe line through which the Binghamton area is served, now consists of four parallel pipes each six inches in diameter. The pipes in this section were originally installed in the early 1880's, and were originally used for the transportation of oil. A portion of these lines runs through a well-populated suburban residential community in the town of Dickinson, Broome County, New York. The plaintiff now wishes to replace these four six-inch lines with a twelve-inch line which would carry gas at a much higher pressure over a new right of way and which would have twice the carrying capacity of the four old lines.

The new proposed right of way crosses the lands of these defendants. The existing right of way is contiguous in some places to the roadbed of a branch of the Delaware and Hudson Railroad Company and is only one rod in width. The proposed new right of way is forty feet in width.

There can be little question from the evidence that there is an urgent and immediate necessity for the enlargement and extension of the pipe-line facilities of the plaintiff. Several reasons have been established for the necessity of the new right of way. By reason of the growing demand for home gas heating and for industrial use, the consumption of gas had increased tremendously. In 1945, the plaintiff corporation delivered 6,000,000 cubic feet of gas to the Binghamton Gas Works on a peak day. In 1954, this peak load had increased to 34,000,000 cubic feet per day. The estimate for the winter of 1954, and 1955, is a peak load of 41,000,000 cubic feet per day. In con-

sidering the question of necessity, it is proper to consider the public need and demand for this commodity in the near future. (*Harlem River & Portchester R. R. Co.* v. *Arnow,* 21 App. Div. 636.) It is quite apparent that the existing pipe lines are not and will not be adequate to supply the needs of the public.

Attorneys for the defendants urge that the existing right of way could be utilized for the twelve-inch pipe line. Several reasons have been shown why this is not possible, some of which are: 1, the existing right of way is not wide enough to install the proposed pipe line with modern machinery; 2, the existing right of way passes within a hundred feet of a hundred or more dwelling houses and the installation of a new pipe line over such a right of way would be contrary to the regulations of the New York State Public Service Commission; 3, a high pressure gas pipe line so close to dwellings, constitutes a safety hazard; 4, the maintenance of a pipe line contiguous or close to a railroad, is not in accordance with the best engineering practice, due to the increased possibility of chemical and electrolysis corrosion; and 5, the proposed new right of way is a half mile shorter and more suitable and adaptable by reason of the contour of the land.

It seems to this court that any of these reasons would be sufficient standing by itself, to justify the plaintiff condemning a new right of way. The Federal Power Commission, after consideration and investigation, has granted a certificate of public convenience and necessity. Once the necessity has been established, the plaintiff has broad discretion as to the route it selects, unless it can be shown that it has acted in bad faith or there has been an abuse of such discretion. (*Matter of New York & Harlem R. R. Co.* v. *Kip,* 46 N. Y. 546; 18 Am. Jur., Eminent Domain, § 108, p. 735; *Tennessee Gas Transmission Co.* v. *Schmidt,* 108 N. Y. S. 2d 435, 437; *Transcontinental Gas Pipe Line Corp.* v. *Borough of Milltown,* 93 F. Supp. 287.) From the evidence before this court, it seems clear, that in laying out the proposed right of way, the plaintiff was only motivated by a desire to select the shortest and most practical route taking into consideration the contour of the land, construction costs and efficiency in maintenance and operation. In these days of modern living, and particularly in this climate, fuel is one of the basic necessities of life. The ever-growing demand for automatic heating, as well as other household uses, together with the increased demand for industrial purposes, creates an urgent need for an ever-increasing supply of natural gas. There seems little question, but that the circumstances shown here, establish an unquestionable public necessity for the proposed right of way.

The defendants contend that the plaintiff has not acted in good faith in negotiating for the purchase of the proposed right of way across the defendants' farms. It appears from the evidence that the plaintiff offered the owners of each of the properties involved the sum of $1.50 per linear rod for a forty-foot right of way, together with additional amounts for crop damage and in the cases of Kuroc and Keesler, additional amounts were offered for property damage. The basic offer of $1.50 per linear rod was based on a value of $100 per acre which the agent for the plaintiff considered to be the value of the better farms in the area. It appears that this offer was accepted by many other property owners along the proposed right of way. The use of this land by the plaintiff would still leave the surface of the land available to the owners for crops and pasture. From the evidence it appears that the land in question is not now put to any other use.

In deciding this issue, it is not the function of this court at this time to determine whether the offers constitute adequate compensation for the easements. The witness, Wagstaff, the agent for the plaintiff, testified as to the facts and reasoning upon which the offers were based. The mere fact that his employer had placed some limitation upon the amount he could pay, does not establish that the plaintiff was acting in bad faith. The statute does not require bargaining and compromise. Subdivision 5 of section 4 of the Condemnation Law merely requires the plaintiff to establish he is unable to agree with the owner for the purchase of the property and the reason for such inability. Although this court is unable to say whether or not the offer was adequate, it can state that it finds no evidence of bad faith in connection with the offers made by the plaintiff. The commissioners, to be appointed by the court, will determine the actual value of the easements. It has been established to the satisfaction of the court that the plaintiff has been unable to agree with the owners. The reason for such disagreement apparently arises from a difference of opinion as to the value between a prospective seller and a prospective purchaser.

In the opinion of this court, the petition sufficiently describes the interests in the defendants' properties which the plaintiff seeks to obtain by condemnation. Subdivision and paragraph marked and designated '' 2 '' of the petition in each case states: '' the right for the purpose of constructing, laying, installing, maintaining, operating, inspecting, repairing, and removing a pipe line or lines for the transportation of gas and/or other

fluids to be buried in the ground, the bottom of which pipe line or lines shall be not less than thirty inches below the surface of the ground, to go upon and use the following described lands.'' There follows in each case a description by metes and bounds of a forty-foot right of way. In the prayer for relief, the right of way is referred to as an easement. In no place in any of the petitions is this proposed easement or use enlarged upon. The owners could still enjoy any utilization of the land which did not interfere with the easement described.

By no stretch of the imagination can such a use of this land be construed as depriving the owner of the entire fee in the property. It is true, that none of these defendants can excavate or construct buildings on such a right of way. If the defendants are able to establish any potential value or special or consequential damages, by reason of the possibility of the future development of any of these properties for building lot subdivisions, such evidence can be produced before the commissioners appointed by the court. This court is unable to hold with the argument that taking the proposed right of way in effect deprives the owners of the properties of the fee and that in reality the fee is being condemned. All that the plaintiff needs is an easement or a right of way. If the fee will be damaged to such an extent that the property is useless for any practicable purpose, such evidence can be produced before the commissioners. However, the fact still remains that the plaintiff only requires an easement. The easement is described with sufficient accuracy and certainty.

It is the determination of this court that the plaintiff is entitled to a judgment providing that the public use requires the condemnation of the real property to wit: the rights of way and easements described in the petitions in the four above-entitled actions and allowing the plaintiff to take and hold rights of way and easements for the public use specified upon making compensation therefor in amounts to be determined by commissioners to be appointed by this court.

The plaintiff has applied to this court by a separate motion, returnable June 21, 1954, for immediate temporary possession of the easements involved in these proceedings. The court reserved decision until after the trial. It appearing to the court from plaintiff's moving papers and from the evidence on the trial, that the plaintiff is now ready to commence construction and it further appearing that the need is immediate and urgent to increase the supply of natural gas in this area at the earliest possible date and it appearing to the satisfaction of this court

that the public interest would be prejudiced by delay, it is the determination of this court that the plaintiff should be granted immediate temporary possession of the easements which it seeks to condemn in these proceedings and should be permitted to enter immediately upon the real properties described in the petitions and devote the same temporarily to the public use specified in the petitions, pursuant to section 24 of the Condemnation Law, upon deposit with the court of sums to be fixed by the court upon notice to the parties of not less than eight days.

Judgments and orders may be submitted accordingly.